UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CECIL PRUITT, JR., #R2186                                          PETITIONER

VS.                                        CIVIL ACTION NO. 3:13cv988-CWR-FKB

CHRISTOPHER B. EPPS,
Commissioner of MDOC                                              RESPONDENT

<u>REPORT AND RECOMMENDATION</u>

This cause is before the Court on the petition of Cecil Pruitt, Jr., for habeas corpus relief

filed pursuant to 28 U.S.C. § 2254.  At the outset, the Court notes that its review of Pruitt's

conviction is circumscribed.   In other words, federal courts do not sit as "super" state supreme

courts in habeas corpus proceedings to review errors under state law.   *Dickerson v. Guste*, 932

F.2d 1142, 1145 (5th Cir. 1991).   Instead, "[a] state prisoner is entitled to relief under 28 U.S.C.

§ 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the

United States.'" *Engle v. Isaac*, 456 U.S. 107, 110 (1981)(citing 28 U.S.C. § 2254(a)).   Guided

by these fundamental principles, the Court has considered Pruitt's petition, the Respondent's

answer, and all related filings.  For the reasons that follow, the undersigned concludes that the

petition is not well-taken and should be dismissed with prejudice.

<u>I. FACTS AND PROCEDURAL HISTORY</u>

Pruitt is currently in the custody of the Mississippi Department of Corrections

("MDOC") after revocation of his post-release supervision in the Circuit Court of Lauderdale

County, Mississippi, on March 18, 2008. [7-3] at 14.  In his Petition, Pruitt challenges the

constitutionality of the revocation and his sentencing.  A review of the procedural aspects of the

Petition will aid the Court in its consideration of this case.

On February 7, 2005, Pruitt pleaded guilty in the Circuit Court of Lauderdale County,

Cause No. 552-04, to a charge of the sale of cocaine within 1,500 feet of a church in violation of Miss. Code Ann. § 41-29-139. [7-4] at 68-71.  At that time, the court sentenced Pruitt to a term of twenty (20) years, with nineteen (19) years and three hundred sixty-four (364) days suspended, and one (1) day to serve.  *Id.*   The sentence was set to run consecutively to a revocation on another charge.  *Id.* at 68.

While Pruitt was out on post-release supervision in Cause No. 552-04, he was arrested on October 9, 2007, on a new charge of sale of cocaine within 1,500 feet of a church, resulting from his sale of cocaine to a confidential informant. [7-4] at 74-75. The Mississippi Court of Appeals summarized the events leading to Pruitt's arrest, as follows:

> [The confidential informant] stated that before the buy, he was searched by task force agents, wired, and given two marked $20 bills to use to purchase drugs.  He was then dropped off in the vicinity of the sale.  Pruitt, who was driving a car with his girlfriend and baby as passengers, pulled up to [the confidential informant].  The two began talking, and [the confidential informant] gave Pruitt money in exchange for cocaine.  Once [the confidential informant] walked away from the car, narcotics agents pulled Pruitt over.  Cocaine residue was found in the console of the car he was driving, along with the marked $20 bills. [The confidential informant] was picked up by the police shortly thereafter, and was found to be in possession of cocaine and without the $20 bills.

*Pruitt v. State*, 85 So. 3d 876, 879 (Miss. Ct. App. 2011).

The next day, on October 10, 2007, the Circuit Court of Lauderdale County issued a formal warrant for Pruitt's arrest based on an affidavit from an MDOC Field Officer stating that Pruitt had violated the terms of his post-release supervision on Cause No. 552-04 by committing a new offense of selling cocaine within 1,500 feet of a church on October 9, 2007. [7-4] at 75. On October 10, 2007, the MDOC Field Officer also filed a petition to revoke Pruitt's post-release supervision based on the new charge.  *Id.* at 76.

On November 14, 2007, a Grand Jury in Lauderdale County Circuit Court indicted Pruitt

on the October 9, 2007, charge of sale of cocaine within 1,500 feet of a school and church, in violation of Miss. Code Ann. §§ 41-29-139 and 41-29-142. [7-4] at 62.  Appended to the indictment was a Habitual Offender Attachment pursuant to Miss. Code Ann. § 99-19-81, which referenced Pruitt's two prior felony convictions on charges of sale of cocaine dating back to 2005 and 1997.  *Id.* at 63.

On December 17, 2007, Pruitt, along with his attorney and the District Attorney, signed a formal Waiver of Arraignment and Entry of Plea on Non Capital Cases on the indictment for the October 9, 2007, sale of cocaine charge in Cause No. 633-07. [7-4] at 67.  The Waiver also set the matter for trial on February 4, 2008.  *Id.*  On January 30, 2008, the Circuit Court entered an Order Resetting Cause that reset the trial of Cause No. 633-07 from February 4, 2008, to March 18, 2008. *Id.* at 66.

On March 18, 2008, the Circuit Court of Lauderdale County entered an Order of *Nolle Prosequi* on the new charge of sale of cocaine in Cause No. 633-07, when the State was unable to locate the confidential informant for trial. [7-3] at 15.  On the same day, the trial court held a hearing on the State's motion to revoke post-release supervision.  *Id.* at 14, 34.  Based, in part, on the testimony of the CI whom the State located in time for the revocation hearing, the Circuit Court revoked Pruitt's post-release supervision in Cause No. 552-04 and reinstated a term of nineteen (19) years and three hundred sixty-four (364) days.  *Id.* at 14, 97-99.

Because the revocation of a suspended sentence is not appealable in Mississippi, *see Griffin v. State*, 382 So. 2d at 289, 290 (Miss. 1980), on July 8, 2008, Pruitt filed a *pro se* petition for post-conviction collateral relief in the Circuit Court of Lauderdale County to challenge the revocation.  In his petition, filed pursuant to Miss. Code Ann. § 99-39-1, he raised

several grounds for relief, summarized as follows:

I. There was insufficient evidence to support the revocation of Pruitt's post-release supervision.

II. Pruitt's due process rights as provided by *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morrisey v. Brewer*, 408 U.S. 471 (1972) were violated when the State:

 A. Failed to disclose the evidence against Pruitt;

 B. Failed to provide adequate notice of the hearing and, thus, deprived Pruitt of an opportunity to present witnesses or documentary evidence on his behalf;

 C. Failed to provide a neutral and detached judge; and

 D. Failed to provide a written statement by the fact-finder of the evidence relied upon in reaching a decision.

[7-3] at 9-16.

Thereafter, on October 22, 2008, counsel entered an appearance on Pruitt's behalf. *Id.* at 17. On March 17, 2009, Pruitt and his counsel signed an Amended Petition for a Writ of Habeas Corpus and/or Motion to Reinstate Post-Release Supervision, which was filed in the Circuit Court of Lauderdale County on March 18, 2009. *Id.* at 18-29. The Amended Petition clarified the grounds set forth in Pruitt's initial petition, and set forth additional grounds for relief, summarized as follows:[1]

---

[1] The Respondent summarized the grounds in its Answer [6], and the Court has reviewed both the summarized grounds presented by the State and Petitioner's grounds as set forth in the Amended Petition. For brevity's sake, the Court will incorporate the Respondent's summary of the grounds in this Report and Recommendation.

I.      The trial court erred in granting the motion to revoke Pruitt's post-release

        supervision without adequate evidence to show that Petitioner had committed the

        new offense and violated the terms of his release.

II.     Pruitt's due process rights as provided by *Gagnon v. Scarpelli*, 411 U.S. 778

        (1973) and *Morrisey v. Brewer*, 408 U.S. 471 (1972) were violated when the

        State:

        A.      Failed to disclose evidence against Pruitt;

        B.      Failed to provide adequate notice of the hearing and, thus, deprived Pruitt

                of an opportunity to present witnesses or documentary evidence on his

                behalf;

        C.      Failed to provide a neutral and detached judge; and

        D.      Failed to provide a written statement by the fact-finder of the evidence

                relied upon in reaching a decision.

III.    Pruitt's right to choose whether or not to testify was denied because Petitioner's

        lack of notice of whether the new charge of sale had been dismissed with or

        without prejudice.

IV.     The confidential informant should not have been allowed to testify at the

        revocation hearing, when the trial for the new sale of cocaine had been *nolle*

        *prossed* due to the confidential informant's absence.

V.      Ineffective assistance of counsel for:

        A.      Failing to move to suppress the evidence seized from Pruitt's car or the

                statements Pruitt made to law enforcement;

     B.     Failing to advise Pruitt to testify on his own behalf;

     C.     Failing to allow Pruitt to review the audio tape of the drug buy;

     D.     Failing to meet with Pruitt more than once or twice to plan a defense; and

     E.     Failing to insist that the judge listen to the audio tape in open court.

VI.     The State failed to satisfy the burden of proof to support the revocation.

VII.     Pruitt was denied due process because the trial judge did not make a finding that the burden of proof had been met, but based his ruling on personal opinion.

VIII.     The evidence seized from Pruitt's car and the statements made by Pruitt to law enforcement were illegally obtained in violation of his rights under the 4th, 5th, 6th, and 14th Amendments.

IX.     The trial court erred in overruling defense counsel's objection to Agent Merchant's testimony regarding cocaine residue found in Pruitt's car.

X.     The trial court erred in preventing defense counsel from questioning the witnesses regarding an alleged earlier false claim by the confidential informant that Pruitt was transporting drugs.

XI.     The cocaine sold to the confidential informant was not introduced into evidence.

*Id.*

On October 30, 2009, the trial court denied Pruitt's motion for post-conviction relief in a written opinion. [7-1] at 82-88. Pruitt filed a Motion for Reconsideration, which the Court denied in a written opinion signed on January 26, 2010. *Id.* at 89-96.

Thereafter, with the assistance of counsel, Pruitt appealed to the Mississippi Supreme Court, raising ten grounds for relief, quoted as follows:

I.      Whether a prisoner is denied due process of law and fundamental fairness and a
        fair hearing when he is denied an evidentiary hearing on a post conviction
        collateral relief petition where he shows that he was denied the right to testify
        because he had no notice that the trial of the new charge was not to go forth but
        that the court time would be used for a revocation of post release supervision and
        thus the prospect of a trial of the new charge was held over his head throughout
        the hearing and the trial judge participated in this decision with the district
        attorney and the judge's fairness was tainted.

II.     Whether a prisoner is denied due process of law and fundamental fairness when
        he is denied an evidentiary hearing on a post-conviction collateral relief petition
        where the trial judge ruled at the revocation hearing that he had no right to
        discovery of the evidence against him, this in particular being evidence that a
        purported residue of cocaine was found in the prisoner's vehicle, which evidence
        is critical in supporting the story of the CI's account of purchasing cocaine from
        the prisoner on post release supervision.

III.    Whether a prisoner is denied due process of law and fundamental fairness when
        he is denied an evidentiary hearing on a post conviction collateral relief petition
        where he shows that he did not have the effective assistance of counsel in that his
        counsel did not move to suppress evidence seized from the prisoner and
        statements purportedly made by the prisoner based upon no probable cause arrest

and no *Miranda* warning and consent obtained by deception; did not produce

documentary vehicle title evidence that the prisoner had just purchased the

vehicle the day before; did not have prisoner testify; did not cross examination

[sic] CI on contradictory motivations, on the CI trying to buy cocaine or drugs

from others before contact with the prisoner, did not point out contradictory drug

agent statements of the time CI had between prisoner encounter and handing

drugs to agents, CI's opportunities to buy elsewhere, did not point out that the

residue substance per the lab report was negative for cocaine, did not submit

vehicle title documentation that prisoner had the white Lincoln only for one day

before the purported sale; and where counsel did not prepare for the hearing by at

least knowing whether prisoner should testify and by introducing wire tape

recording of CI's encounter with the prisoner but the prisoner had never listened

to the tape.

IV.     Whether a prisoner is denied due process of law and fundamental fairness when

he is denied an evidentiary hearing on a post conviction collateral relief petition

where he shows that the confidential informant lied about the prisoner selling the

CI cocaine, the CI was attempting to purchase drugs before encountering the

prisoner, and the CI had ample opportunity to obtain cocaine elsewhere than the

prisoner and there were conflicting accounts for the motivation of the CI and

conflicting accounts supported by documentation between the testifying agent and

those non-testifying agents as to the length of time the CI was out of control after

-8-

the alleged purchase.

V.      Whether a prisoner is denied due process of law and fundamental fairness when

he is denied an evidentiary hearing on a post-conviction collateral relief petition

where he shows that the confidential informant's credibility depended upon the

officers immediately seizing the prisoner, the alleged "buy money" and the "over

ounce of cocaine" from which the CI said the prisoner broke off the smaller piece

of crack cocaine to sell the CI.

VI.     Whether a prisoner is denied due process of law and fundamental fairness when

he is denied an evidentiary hearing on a post conviction collateral relief petition

where he shows that the confidential informant had lied about what happened at

his encounter with the prisoner at the prisoner's automobile where the affidavits

show that any money received from the CI was repayment of a loan to the CI

from the prisoner.

VII.    Whether a prisoner is denied a fair hearing, fundamental fairness and due process

of law in a revocation hearing where the judge rules there is no right to discovery

of the evidence against the prisoner, no right to 4th amendment protections and

actively participates in favorably resurrecting the CI witness, under the

circumstances that the judge has participated in a decision to forego trial on the

primary charge and only hold the revocation hearing and this decision was not

communicated to the prisoner.

VIII.    Whether a prisoner is denied due process of law and fundamental fairness in a revocation hearing on his post release supervision where the trial judge, in his ruling denying the petition where it considers the argument in prisoner's petition that he had no notice of the revocation hearing but came to court expecting only to be tried on the new charge, reveals that he and the state had decided not to hold the trial on the new charge, but only hold the revocation hearing, which revelation does not indicate at all that this was communicated to the prisoner or his attorney and thus the trial judge could not be fair at the revocation hearing because he became vested in securing an outcome disfavorable to the prisoner.

IX.    Whether a prisoner is denied due process of law and fundamental fairness and notice of and opportunity to prepare when the revocation hearing is held without there first being a preliminary revocation hearing or waiver and there is no notice of the revocation hearing date.

X.    Whether a prisoner is denied due process of law and fundamental fairness and right to confrontation when the cocaine forming the basis of the revocation is not introduced into evidence and only a copy of a crime lab analysis is introduced and the forensic analyst is not presented to testify.

[7-1] at 35-37.

After the Mississippi Supreme Court assigned the appeal to the Mississippi Court of Appeals, the Court of Appeals issued an opinion affirming the trial court's denial of Pruitt's motion for post-conviction relief. *Pruitt,* 85 So. 3d at 876. Thereafter, the Mississippi Court of Appeals denied rehearing, and Pruitt filed a petition for writ of *certiorari* before the Mississippi Supreme Court. *Id.* After granting the petition for writ of *certiorari*, the Mississippi Supreme Court issued an order stating that it had granted the petition "in order to carefully review the issues and record in this matter. Having done so, the Court now finds that there is no need for further review, and that the writ of *certiorari* should be dismissed." [6-1] at 12.

Thereafter, Pruitt filed his Petition for writ of habeas corpus relief in this Court, pursuant to 28 U.S.C. § 2254. [1]. No counsel has formally entered the case on Pruitt's behalf, but it appears that counsel has assisted him. *Id.* at 1. In his Petition, Pruitt sets forth sixteen grounds for relief, which the Court summarizes, as follows:

Ground One:   At the revocation hearing, the trial court denied Petitioner due process of law in the following ways:

A.   The trial court denied him a preliminary revocation hearing and notice of the revocation hearing or preliminary hearing;

B.   The trial court denied disclosure of the evidence against him;

C.   The trial court denied him the opportunity to present witness or evidence on his behalf;

D.   The trial court denied him the opportunity for a neutral and detached decision maker;

E.   The trial court failed to provide him with a written statement of the

evidence upon which it relied.

F.    Petitioner was unfairly surprised by the confidential informant's testimony at the hearing, which indicates that the "State chose to take the easier way out" in seeking revocation rather than trial; and

G.    The trial court based its decision to revoke Pruitt's post-release supervision on insufficient evidence.

Ground Two:  A.    Petitioner was denied his right to choose whether or not to testify due to the "innocuous" nature of the *nolle prosequi* order; and

B.    Petitioner was denied due process because the confidential informant was produced at the revocation hearing, when he had been unavailable for trial.

Ground Three: Ineffective assistance of counsel for:

A.    Failing to suppress the evidence seized from Pruitt's car; and

B.    Failing to suppress any statements made by Pruitt to law enforcement.

Ground Four: The revocation of Petitioner's post-release supervision was based on evidence that was illegally obtained.

Ground Five:  Ineffective assistance of counsel for:

A.    Failing to have Pruitt testify;

B.    Failing to allow Pruitt to review the audio tape of the buy;

C.    Failure to prepare adequately for trial or hearing; and

D.    Failure to have the audio tape played in open court.

Ground Six:    Insufficient evidence to support the revocation.

Ground Seven: The State failed to satisfy the burden of proof.

Ground Eight: The trial judge failed to make a finding that the evidence was sufficient to

support the revocation.

Ground Ten:[2]  Petitioner was denied his right to be protected from illegal searches.

Ground Eleven: The trial court erred in overruling the defense's objections to testimony

regarding cocaine residue found in Pruitt's car.

Ground Twelve: The trial court erred in preventing the defense from eliciting testimony

regarding an alleged previous false report by the confidential informant

that Pruitt was transporting drugs.

Ground Thirteen: Pruitt proffers his testimony, had he been given the opportunity to

testify.

Ground Fourteen: The State failed to introduce any of the cocaine into evidence.

Ground Fifteen: The confidential informant provided law enforcement with false

information when he stated that Pruitt still had an ounce of cocaine in the

car.

Ground Sixteen: The standard of proof for revocation hearings is fundamentally unfair.

Ground Seventeen: The trial judge was not a neutral decision maker.

*Id.* at 11-18.  Furthermore, Pruitt attached to his Petition "Supporting Facts"  and "Additional

Issues added by Pruit[t] under oath." [1] at 21-25. After reviewing these additional pages, the

Court finds that the pages do not set forth additional grounds for relief, but, instead, the pages

---

[2]Pruitt's Petition does not contain a Ground Nine.  However, for ease of reference, the
State followed Pruitt's numbering system.  The Court will do the same.

support the seventeen grounds for relief set forth in the main portion of the Petition.

The State filed a Response, along with the record, and now this matter is before the Court.

## II.  DISCUSSION

### A.  Claims Barred from Habeas Review

#### 1.  Grounds One (C), One (E), Twelve, and Sixteen

It is well-settled that applicants seeking federal habeas relief under section 2254[3] are required to exhaust all claims in state court prior to requesting federal collateral relief.  *See Coleman v. Thompson*, 501 U.S. 722, 729-55 (1991); *Whitehead v. Johnson*, 157 F.3d 384, 387

---

[3]Section 2254 provides, in relevant part, that:

>  (b)      (1)An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B)      (i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>  (3) A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
>  (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c)(1996).

(5th Cir. 1998).  The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see Mercadel v. Cain*, 179 F.3d 271, 275 (5th  Cir. 1999); *Whitehead*, 157 F.3d at 387.

The State argues that Pruitt has failed to "exhaust" or present several grounds to the State's highest court, as follows:

> Ground One:   Pruitt was denied due process at his revocation hearing in the following ways:
>
> > C.      The trial court denied him the opportunity to present witnesses or evidence on his behalf; and
> >
> > E.      The trial court failed to provide him with a written statement of the evidence upon which it relied.
>
> Ground Twelve: The trial court erred in preventing the defense from eliciting testimony regarding an alleged previous false report by the confidential informant that Pruitt was transporting drugs.

Ground Sixteen: The standard of proof for revocation hearings is fundamentally unfair. Indeed, a review of the filings in state court shows that Pruitt failed to present these grounds to the State's highest court for consideration.  Accordingly, Pruitt has failed to exhaust these claims in state court.

Should Pruitt try to return to state court to pursue this argument as a basis for relief, consideration of the arguments would be procedurally barred in state court because the three-year limitations period for post-conviction relief set forth in Miss. Code Ann. § 99-39-5(2) has

run.  Thus, Petitioner has technically exhausted his state court remedies on these claims.  *See*

*Sones v. Hargett*,  61 F.3d 410, 415 (5th Cir. 1995).  A federal court may not review the merits

of a procedurally barred claim absent a showing either of cause for the default and actual

prejudice or that failure to address the claim would result in a miscarriage of justice.  *Id.*

Petitioner has made no such showing. Accordingly, habeas review of these claims is

procedurally barred.

### 2.  Ground One, Subpart A: Denial of a Preliminary Revocation Hearing.

Pruitt argues that the he was denied due process of law when the State failed to hold a

preliminary revocation hearing.  The Respondent argues that because Pruitt failed to make this

argument at the actual revocation hearing, he has waived the argument.  Pruitt presented this

ground for relief to the Mississippi Court of Appeals, which found that Pruitt had waived it,

stating Pruitt's failure at the revocation hearing "to raise the issue of denial of a preliminary

hearing to revoke post-release supervision waives the issue."  *Pruitt*, 85 So. 3d at 880 (citing

*Hubbard v. State*, 919 So. 2d 1022, 1027 (Miss. Ct. App. 2005)).   The *Hubbard* court based its

reasoning, in part, on the statutory procedural bar of Mississippi Code Annotated § 99-39-21,

which provides, as follows:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or
> errors either in fact or law which were capable of determination at trial, and/or on
> direct appeal, regardless of whether such are based on the laws and the
> Constitution of the state of Mississippi or of the United States, shall constitute a
> waiver thereof and shall be procedurally barred, but the court may upon a
> showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1).

"When a state court declines to hear a prisoner's federal claims because the prisoner

failed to fulfil a state procedural requirement, federal habeas [relief] is generally barred if the

-16-

state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)(citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).  In *Coleman*, the United States Supreme Court held that federal review of a claim is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule.  *Coleman*, 501 U.S. at 722.  The Fifth Circuit has held that Section 99-39-21(1) is an independent state procedural bar.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997).  Accordingly, federal habeas review of this claim is barred.

Furthermore, the petitioner has shown neither cause (such as an external impediment) for this default, nor prejudice that would result in the court's dismissal of these claims on procedural grounds. *United States v. Flores,* 981 F.2d 231 (5th Cir.1993). Neither has the petitioner argued that dismissal of these claims on procedural grounds would lead to a fundamental miscarriage of justice – an exception confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir.1999).

Furthermore, even if the Court were to review the claim on the merits, the argument does not support a claim for habeas relief.  Any claim regarding the "lack of a preliminary hearing is meritless since a final revocation hearing was held." *Loisel v. King*, 2011 WL 2414615, *6 n. 2 (S.D. Miss. Jan. 11, 2011)(citing *Collins v. Turner*, 599 F.2d 657, 658 (5th Cir. 1979)(denying habeas relief for failure to conduct preliminary probation revocation hearing when final revocation hearing had been conducted)).  Accordingly, habeas relief on this issue should be denied.

### B.  Claims Eligible for Habeas Review

The Court next turns to examine Pruitt's remaining grounds for relief.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

28 U.S.C. § 2254(d) provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "contrary to. . .clearly established Federal law," under Section 2254(d)(1),

means the state court either "applie[d] a rule that contradicts the governing law set forth in our

cases" or in a case with facts "materially indistinguishable from a decision of this Court" arrived

at a different conclusion.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court "made clear that the

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ

if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts' of petitioner's case."  539 U.S. at 520 (quoting

*Williams,* 529 U.S. at 413).  Thus, "[t]he question under AEDPA is not whether a federal court

believes the state court's determination was incorrect but whether that determination was

unreasonable–a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The Supreme Court has observed that "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). There is a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7).

In reviewing the state court's factual findings, including implied findings, this Court defers to the state court's factual determinations unless they were "'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000)(quoting 28 U.S.C. § 2254(d)(2)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784. In the absence of a statement of reasons from the state court, "a [federal] habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786. According to the Supreme Court, this inquiry is the "'only question that matters under § 2254(d)(1).'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Although petitioner may have presented the state court with what the federal court believes to be a "strong case for relief[, it] does not mean the state court's contrary conclusion was

unreasonable." *Id.*

As both the United States Supreme Court and the Fifth Circuit Court of Appeals have recognized, a criminal defendant is not constitutionally entitled to a perfect trial, just a fair one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986); *Sawyer v. Butler*, 848 F.2d 582, 594 (5th Cir. 1988). Perceived improprieties do not warrant habeas corpus relief. *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997).

Moreover, in the context of parole revocation, the defendant's rights are more circumscribed. The United States Supreme Court has determined "that revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). It is well-settled that revocation proceedings need only meet the "minimum requirements of due process" by providing the following procedural safeguards:

1. Written notice of claimed violations of (probation or) parole;

2. Disclosure to the (probationer or) parolee of evidence against him;

3. Opportunity to be heard in person and to present witnesses and documentary evidence;

4. The right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds a good cause for not allowing confrontation);

5. A "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

6. A written statement by the fact finders as to the evidence relied on and reasons for revoking (probation or) parole.

*Gagnon v. Scarpelli*, 411 U.S. 778, 786(1973) (quoting *Morrissey*, 408 U.S. at 489).

A further consideration is that, under Mississippi law, a conviction is not necessary for the court to revoke probation. *Smith v. State*, 742 So. 2d 1146 (Miss. 1999). "Circuit court judges have the authority to 'revoke all or any part of' post-release supervision and return an offender to the custody of the Mississippi Department of Corrections." *Rucker v. State*, 909 So. 2d 137, 140 (Miss. Ct. App. 2005)(citing Miss.Code Ann. § 47-7-37 (Rev. 2004)). "The trial judge may revoke probation 'upon a showing that the defendant has more likely than not violated the terms thereof.'" *Smith*, 742 So.2d at 1148 (quoting *Wallace v. State*, 507 So. 2d 1184, 1190 (Miss. 1992)). "The arrest, revocation, and recommitment procedures of [Miss. Code Ann. § 47-7-37 governing probation] also apply to persons who are serving a period of post-release supervision imposed by the court." Miss. Code Ann. § 47-7-37 (2014).

With these tenets in mind, the Court concludes that Pruitt is not entitled to habeas relief. Pruitt has pointed to no controlling authority to which the decision in his case runs contrary.  Nor has Pruitt demonstrated that the decision in his case was unreasonable in light of the evidence presented. The Court now turns to discuss Pruitt's grounds for relief in detail.

1.  Ground One, Subpart A: The trial court denied Pruitt due process when it failed to provide notice of the revocation hearing.

Pruitt argues that the trial court denied him due process in several respects regarding the revocation hearing.  He first argues that the trial court failed to provide a notice of the revocation hearing in that he believed that the trial of the new charge, Cause No. 633-07, would be held on March 18, 2008, not the hearing on the revocation of his post-release supervision in Cause No. 552-04.

The Mississippi Court of Appeals reviewed this issue and found it to be without merit. The Court of Appeals determined that the Petition for post release revocation filed on October 10, 2007, served as notice of the claim that he had violated his post-release supervision.  *Pruitt*, 85 So. 3d at 880; *see also* [7-4] at 76.  The court also reviewed the transcript of the revocation hearing and found that the Court announced that it had convened for consideration of two matters: the trial on the new sale of cocaine charge, and the revocation hearing. [7-3] at 34-37. At that point, both the counsel for the State and Pruitt's counsel voiced an understanding that the parties were there to proceed on the petition for revocation in Cause No. 552-04.  Because the record reflects that Pruitt's counsel had received notice of the petition for revocation, and he voiced an understanding, without objection, that the revocation hearing would proceed that day, the Court finds that the decision of the Mississippi Court of Appeals on this issue was neither contrary to, nor an unreasonable application of federal law on this issue.  Both *Gagnon* and *Morrissey* require "written notice of claimed violations of probation," and such was provided in this case.  Accordingly, this issue does not provide a basis for habeas relief.

## 2. Grounds One, Subpart B and Eleven: The trial court denied disclosure of the evidence against him.

Pruitt argues that the trial court denied him discovery and disclosure of the evidence against him. He also argues that the trial court wrongfully considered testimony of the witnesses regarding a crack cocaine "crumb" for which there were no lab results.  The Mississippi Court of Appeals considered the discovery issue and noted that Pruitt's attorney had failed to raise the issue at the hearing.  *Pruitt*, 85 So. 2d at 881.  The Court of Appeals did not specifically address the cocaine "crumb" issue, but addressed other arguments related to discovery.  Even so, the

court analyzed all discovery issues under the parameters of *Gagnon* and *Morrissey* and found that due process requirements had been met.

Likewise, this Court finds that the decision of Mississippi Court of Appeals on these issues was neither contrary to, nor an unreasonable application of, federal law.  The evidence and witnesses presented in the revocation hearing were some of the same witnesses and evidence that the State would have been presented in the trial of the new sale of cocaine charge, Cause No. 633-07, against which Pruitt's counsel had prepared to defend that same day.  According to the transcript of the hearing, Pruitt's counsel demonstrated familiarity with the witnesses and the evidence supporting the charge in Cause No. 633-07, and he vigorously cross-examined the witnesses about their testimony and evidence presented.  He questioned the lab results and the chain of custody of the evidence, and he pointed out that some of the alleged cocaine seized from Pruitt's vehicle did not test positive for cocaine. [7-3] at 59.  Moreover, Pruitt fails to proffer what evidence, if any, was not disclosed to him.  Accordingly, because the state court's application of *Gagnon* and *Morrisey* was neither contrary to, nor an unreasonable application of federal law, this ground fails to provide a basis for habeas relief.

<u>3.  Grounds One, Subpart D and Seventeen:</u>

<u>Pruitt was denied a neutral and detached decision maker.</u>

Petitioner vaguely argues that he was denied a "neutral and detached" decision maker in his hearing.  In his proceeding in the Circuit Court of Lauderdale County, the trial judge, before whom his new charge of sale of cocaine would have been tried, also presided over the revocation hearing in Cause No. 552-04.  Pruitt insinuates that because the trial judge signed an Order of *Nolle Prosequi* on the new charge of sale of cocaine in Cause No. 633-07, after its presentation

-23-

by the District Attorney, the trial judge was biased.

Pruitt presented these issues, along with a multitude of others, in his appeal of the trial court's denial of his motion for post-conviction relief. In its opinion, the Mississippi Court of Appeals addressed many issues at length and concluded that none of Pruitt's assignments of error merited relief, but it did not specifically discuss these issues. Nevertheless, for this Court's review, it was not necessary for the Mississippi Court of Appeals to provide an opinion addressing every error in detail. *See Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011)(holding that in order to satisfy the AEDPA's requirement that there be a decision on the merits, it was not necessary for the state court to provide an opinion explaining its order denying relief.).

A review of the record and the statutory framework of post-release supervision in Mississippi demonstrates that the decision of the Mississippi Court of Appeals was neither contrary to, nor an unreasonable application of, federal law on this issue. According to the transcript of the revocation hearing, the trial judge initially stated on the record that he understood that the State no longer wished to pursue prosecution of the new charge of the sale of cocaine in Cause No. 633-07, and that the State, instead, would pursue the revocation of post release supervision in Cause No. 552-04. [7-3] at 34-37. Pruitt's counsel voiced his agreement with the proceedings. *Id.* at 37. Later in the hearing, the trial judge stated on the record that he had signed the Order of *Nolle Prosequi* in Cause No. 633-07 during a break in the proceedings. *Id.* at 95. In his lengthy Order Denying Motion for Reconsideration of Post-Conviction Collateral Relief, the trial judge found that revocation of suspended time was a "suitable punishment" in the case, and he indicated his assent to the District Attorney's recommendation

of this punishment by signing the proposed Order to *Nolle Prosequi* in Cause No. 633-07.  [7-1]
at 95.

As implicitly found by the Mississippi Court of Appeals, these actions by the trial judge
do not violate Pruitt's due process right to a "neutral and detached" decision maker as envisioned
by *Gagnon* and *Morrissey*.  Instead, the trial judge, in his state-sanctioned capacity as decision
maker for matters regarding post-release supervision, simply exercised his authority.  Under
Mississippi law, the trial courts are vested with the authority to revoke post-release supervision.
*See* Miss. Code Ann. §§ 47-7-34 to 47-7-37 (2014).  In Pruitt's case, the record reflects there is
no basis for his claims of bias.  Accordingly, these grounds fail to provide the basis for habeas
relief.

### 4.  Ground One, Subpart F: Petitioner was unfairly surprised by the confidential informant's testimony at the hearing,  and the State wrongfully chose to seek revocation rather than trial of the new sale of cocaine charge; and Ground Two, Subpart B: Petitioner was denied due process with the appearance of the confidential informant.

In Ground One, Pruitt asserts that the State "chose to take the easier way out" in seeking
revocation of the post-release supervision, rather than go to trial on the new charge of sale of
cocaine. He also argues that he was unfairly surprised when the confidential source appeared at
the revocation hearing, after the State had been unable to locate him in time to proceed to trial on
the sale of cocaine charge. He repeats this argument in the last portion of his Ground Two, in
which he argues that he was denied due process when the confidential informant was produced at
the revocation hearing, when he had been unavailable for trial.  The Court interprets these

arguments as due process challenges to the appearance of the State's witness and to the State's decision to pursue revocation of post-release supervision rather than trial on the new charge of sale of cocaine.

The Mississippi Court of Appeals addressed these issues in its opinion and found that they were without merit. *Pruitt*, 85 So. 2d at 876, 881-882. As to Pruitt's "unfair surprise" argument regarding the confidential source, the arresting narcotics task force agent testified that he had been unable to locate the confidential informant on the day before trial, but that officers had located him on the morning Pruitt's cases were to be tried. [7-3] at 54-55. When the confidential informant was called to the stand, Pruitt's counsel did not object to his appearance, and counsel subjected the confidential informant to a vigorous cross-examination that demonstrated familiarity with the confidential informant and his history with Petitioner. *Id.* at 83. Rather than violate his due process rights, the appearance of the confidential informant at trial comported with the due process mandates of *Gagnon* and *Morrissey* by allowing Pruitt to "confront and cross-examine adverse witnesses." Accordingly, the decision of the Mississippi Court of Appeals on this issue was neither contrary to, nor an unreasonable application of federal law, and this issue does not provide a basis for habeas relief.

Furthermore, the State's decision to pursue revocation of post-supervision release, rather than the new charge of sale of cocaine, is a matter of prosecutorial discretion under state law. In considering this issue, the Mississippi Court of Appeals pointed out that "the State could have proceeded with both a revocation and a criminal trial." *Pruitt*, 85 So. 3d at 882. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring

before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).  Furthermore, "[w]hether to prosecute and what charges to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."  *United States v. Batchelder,* 442 U.S. 114, 124, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).  "'The exercise of prosecutorial discretion is to be given great deference by the courts.'" *Dahl v. King*, 2011 WL 7637258, *25 (S.D. Miss. Sept. 9, 2011)(quoting *United States v. Hamm*, 624, 628 n.13 (1981)). Following that reasoning, the Mississippi Supreme Court has concluded that "[i]t is a fundamental principle of our criminal justice system that a prosecutor is afforded prosecutorial discretion over what charge to bring in any criminal trial."  *Watts v. State*, 717 So. 2d 314, 320 (Miss. 1998).  Moreover, by state statute, the prosecutor has the duty to "institute and prosecute to final judgment. . . any case in the name of the state against any person . . . for any violation of the Constitution or the laws of this state. . . ."  Miss. Code Ann. § 25-31-11 (2009).

    In this case, the prosecutor, in his discretion, chose to pursue the petition for revocation rather than to prosecute Pruitt on the new sale of cocaine charge. "[F]ederal *habeas corpus* relief is appropriate only when a conviction has been obtained in violation of some *constitutionally* protected right." *Jones v. Mississippi*, 2006 WL 3703265, *3 (N.D. Miss. Dec. 14, 2006)(emphasis in original).  In *Jones*, the district court considered a *habeas corpus* challenge to Mississippi's habitual offender sentencing laws that had been upheld by the Mississippi Court of Appeals.  Finding that federal courts have no supervisory power over state decisions to pursue sentencing enhancements under state law, the district court denied *habeas corpus* relief.

    Likewise, in the present action, this Court has no supervisory power over a state prosecutor's decision regarding which matter to pursue, a petition for revocation or a charge for

which a grand jury had indicted Pruitt.  Because Pruitt challenges the fundamental authority of the prosecutor's discretion as to which matter to pursue, this argument does not implicate his federal constitutional rights. Accordingly, this ground fails to provide a basis for habeas relief.

     5.  Ground One, Subpart G; Grounds Six, Seven, and Eight: The trial court based its decision to revoke Pruitt's post-release supervision on insufficient evidence.

In broad strokes, Pruitt makes several arguments challenging the sufficiency of the evidence to support his revocation.  In Ground One, Subpart G, Pruitt asserts that the evidence presented at the hearing was insufficient to justify an order of revocation.  Pruitt argues that the trial judge, in error, listened to a recording of the undercover buy of drugs outside the courtroom, yet considered the recording when he made his ruling.  In Ground Six, he argues that he was denied due process of law because the revocation was based upon insufficient credible non-hearsay evidence to support a revocation.  In Ground Seven, he argues that the State did not sustain its burden of proof.  Finally, in Ground Eight, he argues that the trial judge erred when he made no finding of fact that the State had met its burden of proof, therefore he was denied due process of law.

"Probation revocations are not subject to a reasonable-doubt standard. Under Mississippi law, a conviction is not necessary for the court to revoke probation. The trial judge may revoke probation 'upon a showing that the defendant has more likely than not violated the terms thereof.'" *Loisel v. King*, 2011 WL 2414615, at 5 (S.D. Miss. Jan. 11, 2011)(citations omitted)(quoting *Smith v. State,* 742 So.2d 1146 (Miss. 1999)).  In reviewing the state court's factual findings, including implied findings, this Court defers to the state court's factual determinations unless they were "'based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.'"  *Hill*, 210 F.3d at 485.

In this case, the trial court heard the testimony of Pruitt's probation officer, the arresting officer, and the confidential informant.  These witnesses gave detailed testimony regarding the facts and circumstances leading to Pruitt's arrest on the charge of sale of cocaine.  The State presented testimony about the marked bills used to make the buy and the sequence of events surrounding the buy.  The State also submitted to the trial court laboratory evidence confirming that the substance the confidential informant obtained from Pruitt was cocaine and confirming the presence of cocaine residue in Pruitt's vehicle.  Employing "aggressive" questioning, Pruitt's attorney thoroughly cross-examined the witnesses.  Moreover, at the urging of Pruitt's attorney, the trial court also listened to the recording of the alleged transaction.  After summarizing the evidence on the record, the trial court stated that it was "convinced that Mr. Pruitt was involved in a drug sale, cocaine sale, on the evening of October 9 of 2007.  And as such, it was a clear violation of his post-release supervision contract." [7-3] at 97.  On the date of the hearing, the trial court revoked Pruitt's post-release supervision in an order finding that Pruitt had violated his post-release supervision by committing "the offense of sale of cocaine October 9, 2007, in Lauderdale County, MS."  *Id.* at 14.

In a lengthy opinion on Pruitt's Motion for Reconsideration of Post-Conviction Collateral Relief, the trial court set out the appropriate standard of proof in revocation proceedings, stating that the "Court has to only find that it is more likely than not that the accused committed an offense that violates the conditions of his or her MDOC supervision agreement." [7-1] at 92.  The trial court, furthermore, reiterated its reasons for finding there was sufficient evidence to revoke post-release supervision, as follows:

The Petitioner has now presented evidence trying to disprove portions of the testimony of [the arresting task force agent] and [the confidential informant]. After reviewing all supplemented material provided by the Petitioner, this Court finds that there is sufficient evidence that the [confidential informant] was searched, wired, and given two marked twenty (20) dollar bills. He was dropped off in the vicinity of the sale, after which he had a conversation with Mr. Pruitt in his automobile and money was exchanged. The agents involved immediately stopped Mr. Pruitt and cocaine residue was found in the console of the automobile he was driving, along with the marked twenty (20) dollar bills that were given to the CI. The CI was picked up at the designated location and was in the possession of cocaine. As such, the burden of proof for the revocation was met, and based upon the facts presented the revocation of Petitioner's post-release supervision was appropriate.

*Id.* at 93.

Having reviewed the evidence in the record and the trial court's stated reasons for revoking Petitioner's post-release supervision, this Court finds no basis to disturb the trial court's ruling. Looking to Mississippi's law on revocation and the "more likely than not" evidentiary standard, the review of the trial court's decision by the Mississippi Court of Appeals did not result in "an unreasonable determination of the facts in light of the evidence." Sufficient evidence exists to support the trial court's determination that Pruitt violated the terms of his post-release supervision contract by engaging in the sale of cocaine. Accordingly, the arguments regarding sufficiency of the evidence fail to provide a basis for habeas relief.

Moreover, on the record, Pruitt's argument regarding the trial court's decision to listen to the recording of the alleged "buy" are without merit. His counsel entered the disk recording of the alleged "buy" into evidence and requested that the Court listen to it. [7-3] at 84.   At that point, the trial judge stated that there was no equipment in the courtroom that would allow him to listen to the disk.  *Id.*  Nevertheless, the trial judge stated that he would "review the disk prior to making any decision in the case."  *Id.*  Pruitt's counsel voiced no objection to the trial judge's

plan to listen to the disk he had provided outside of his presence. *Id.* Pruitt's counsel again did not object when the trial judge stated that he would listen to the disk during a recess. *Id.* at 88. Accordingly, this contention is without merit, does not implicate constitutional rights, and therefore, it does not provide a basis for habeas relief.

### 6. Grounds Two, Subpart A and Thirteen: Petitioner was denied his right to testify because he did not understand the nature of the Order to *Nolle Prosequi.*

In these grounds, Pruitt argues that because he did not understand whether the new sale of cocaine charge would be dismissed with or without prejudice pursuant to the Order to *Nolle Prosequi*, the trial court denied him his right to testify.   Both the trial court and the Mississippi Court of Appeals considered this argument.  The trial court found that Pruitt "had the opportunity and right to testify and was represented by counsel who presumably conferred with him on his right to testify." [7-1] at 94.  The Mississippi Court of Appeals stated that:

> the record shows that Pruitt was present at the revocation hearing and was represented by counsel.  Yet the defense rested without calling any witnesses. Despite Pruitt's allegation that he was denied the right to testify in his own defense, the record shows that Pruitt was not prevented from testifying at the revocation hearing.

*Pruitt*, 85 So. 3d at 882.

At this juncture, the Court's review is limited, and it must defer to the state court's factual determinations unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A review of the record shows that Pruitt's attorney voiced an understanding that the State did not plan to pursue the new charge of sale of cocaine, but the State would proceed with the petition to revoke. [7-3] at 37.   Pruitt's attorney also rested, without calling witnesses, after which the court

recessed.  *Id.* at 88.  When the hearing resumed, the trial court again confirmed with Pruitt's

counsel that he did not intend to call witnesses.  *Id.* at 89.  Later in the proceedings, the trial

court stated that it had signed the Order of *Nolle Prosequi*, *id.* at 95, and, thereafter, Pruitt's

counsel confirmed that he understood that the case on the new charge of sale of cocaine had been

dismissed without prejudice.  *Id.* at 99.  Considering this evidence, there is ample proof in the

record that the Mississippi Court of Appeals' determination that Pruitt was not prevented from

testifying was reasonable.  Accordingly, this Court must defer to this factual determination, and

these grounds do not provide a basis for habeas relief.

7.  Grounds Three and Five: Ineffective Assistance of Counsel.

Pruitt advances several arguments that his counsel was ineffective.  In Ground Three, he

argues that his counsel was ineffective when he failed to move to suppress the evidence seized

from his car and statements he made to law enforcement. In Ground Five, Pruitt argues that his

counsel was ineffective when he failed to have him testify and when counsel failed to allow

Pruitt to review the audio recording of the drug sale.  Pruitt also asserts in Ground Five that his

counsel was ineffective when he did not prepare adequately for trial or the hearing by visiting

him more than once or twice in the jail and when he did not require the audio recording of the

drug "buy" to be heard in open court.

In order to prevail on a claim for ineffective assistance of counsel before the state court, a

state criminal defendant must satisfy the two-prong test set forth in *Strickland v. Washington*,

466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that before relief can be granted for

ineffective assistance of counsel, a criminal defendant must establish (1) that counsel's

performance was deficient in that it fell below an objective standard of reasonable professional

-32-

service; and (2) that this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different.  *Strickland*, 466 U.S. at 687, 688.  Counsel is presumed to have given competent assistance, and a petitioner must overcome that presumption by demonstrating counsel's actions were not within the province of a reasonable trial strategy.  *See id.* at 689  (to prevail on claim of ineffective assistance of counsel, petitioner must demonstrate counsel's representation fell below an objective standard of reasonable competence as a result of which he was prejudiced).   A state court defendant's failure to establish both prongs of the *Strickland* test warrants rejection of his claims by a reviewing state court tribunal.

As previously observed, under the AEDPA, a federal habeas court evaluates the state court's determination that Pruitt did not satisfy *Strickland* pursuant to the parameters set forth in *Williams v. Taylor*, 529 U.S. at 362.  That is, in order to obtain relief from a federal court on his ineffective assistance claims, Pruitt must show that the state court decision regarding his claims of ineffective assistance of counsel was either "contrary to" federal law, as determined by the Supreme Court, or an "unreasonable application" of *Strickland*.  *Harrington*, 131 S. Ct. at 785. Thus,

> [t]he pivotal question [under the AEDPA] is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.

*Id.*

Further, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles*

*v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).  In fact, while  § 2254(d), as amended, "stops short of imposing a complete bar on federal litigation on claims already rejected in state court proceedings" by "preserv[ing] authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents[,] [i]t goes no farther."  *Id.*  Put another way, when applying *Strickland* and section 2254(d), review is "doubly deferential."  *Knowles*, 129 S. Ct. at 1420; *Harrington*, 131 S. Ct. at 788.

   The Court has reviewed the decision of the Mississippi Court of Appeals on these grounds and finds that its application of the *Strickland* standard was reasonable.  Pruitt argues that his counsel was ineffective for failing to suppress both the evidence seized and his statements made to law enforcement.  However, in error, Pruitt presupposes that the Mississippi Rules of Evidence, which govern the admission of evidence at jury and non-jury trials, apply in revocation proceedings, which are conducted solely before the trial judge. To the contrary, the Mississippi Rules of Evidence "do not apply to proceedings 'granting or revoking probation," and by extension therefrom, to revocation of post-release supervision.  *Younger v. State*, 749 So. 2d 219, 221 (Miss. Ct. App. 1999); *see also Anderson v. State*, 89 So. 3d 645, 650-651 (Miss. Ct. App. 2012)(clarifying that procedures for probation revocation apply to revocation of post-supervised release). Moreover, Pruitt's attorney made arguments against the trial court's consideration of certain evidence, and he conducted an "aggressive" cross-examination of the State's witnesses before the Judge, who ultimately decided what evidence to consider.  Accordingly, the Mississippi Court of Appeals' decision on this issue was reasonable, and these arguments fail to form the basis for habeas relief.

In Ground Five, Pruitt argues that his counsel was ineffective when he failed to have Pruitt testify, when he failed to let Pruitt review the audio recording, when counsel did not prepare adequately for trial, and when he did not insist that the audio recording be played in open court.  All of these allegations are conclusory, and, therefore, do not raise a constitutional issue in a federal habeas proceeding.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).  Moreover, Pruitt's attacks on whether to have him testify and the presentation of the audio recording challenge strategic choices and tactics employed by the attorney at the revocation hearing.  A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009).  In this case, a review of the trial transcript demonstrates that Pruitt's counsel was familiar with the evidence and had adequately prepared for trial, he vigorously and aggressively cross-examined the State's witnesses about the events and the poor quality of the audio recording, and he presented the trial court with a copy of the audio recording.  As stated by the trial judge, the only reason he did not listen to it in open court was that there was no equipment available in the courtroom which would have allowed him to do so.  Accordingly, the undersigned finds that the application of the *Strickland* standard by the Mississippi Court of Appeals was reasonable, and therefore, these grounds do not form the basis for habeas relief.

### 8.  Grounds Four and Ten: The evidence used to revoke Pruitt's post-release supervision was obtained through an illegal search and seizure.

In Ground Four, Pruitt argues that his revocation was based on evidence obtained in violation of his rights under the 4th, 5th, 6th, and 14th Amendments because the initial seizure was

based on false evidence supplied by the confidential informant. Ground Ten also briefly argues against the search and seizure by asserting that the "buy" money and cocaine residue were not in "plain view," there was no probable cause for a stop, and no constitutionally lawful consent to search existed.

Once again, this Court's review of the decision of the Mississippi Court of Appeals on these issues is circumscribed. That is, the Court's review is limited to whether the state court's application of clearly established federal law on these issues was "unreasonable." The Mississippi Court of Appeals did not directly address these issues, but observed that the trial court had concluded that the drugs involved in "Pruitt's alleged second sale of cocaine were legally seized from him because there was probable cause to arrest him based upon the agents having listened to him during a drug sale just moments prior to the arrest." *Pruitt*, 85 So. 3d at 883. The Mississippi Court of Appeals also concluded that Petitioner's counsel was not ineffective when he did not manage to suppress the evidence seized from Pruitt's car at the time of the stop. Nevertheless, Pruitt still shoulders the burden of demonstrating there was "no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

The Court finds that the decision of the Mississippi Court of Appeals on these issues was reasonable. Although the Mississippi Court of Appeals noted that the trial court had found probable cause for the stop, the heightened standard for stop and seizure established by the probable cause standard did not necessarily apply to Pruitt due to his post-release supervision status at the time of the stop. That is, as one subject to post-release supervision, Pruitt had agreed to significantly diminished privacy interests as a condition of his release. *See* Order Accepting Guilty Plea and Imposing Sentence, [7-4] at 68. "When an officer has reasonable

suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. Knights*, 534 U.S. 112, 121 (2001). In this case, Pruitt was subject to diminished privacy interests, and officers stopped him after listening to an apparent drug sale by him. These arguments do not provide the basis for habeas relief.

### 9. Ground Fourteen: The State failed to introduce any of the cocaine into evidence.

In this ground, consisting of one sentence, Pruitt argues that he is entitled to habeas relief because the State failed to introduce any evidence of the alleged cocaine at the revocation hearing. As the revocation hearing's purpose was not a trial of the sale of cocaine charge, but to determine whether or not Pruitt had violated the terms of his post-release supervision, the Court of Appeals' application of the due process rights accorded to defendants in parole hearings was reasonable. As stated previously, under Mississippi law, "the trial judge may revoke probation 'upon a showing that the defendant has more likely than not violated the terms thereof.'" *Smith*, 742 So.2d at 1148 (quoting *Wallace*, 507 So. 2d at 1190). Considering the testimony of the witnesses, as well as the laboratory results, there was more than sufficient evidence to show that Pruitt had violated the terms of his post-supervised release. Therefore, the State's failure to introduce the actual cocaine did not violate Pruitt's constitutional rights, and, therefore, does not form the basis of habeas relief.

In addition, the State addresses Pruitt argument as he presented it on appeal to the Mississippi Court of Appeals. That is, it reads into his one sentence argument an attack on the State's reliance on laboratory results at the revocation hearing, rather than introducing the actual

-37-

cocaine at the revocation hearing.  In his state filings, Pruitt challenged the state's reliance on laboratory results based on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), which requires in-person testimony of individuals who conduct chemical testing of evidence in criminal trials.  The Mississippi Court of Appeals considered this issue and found that Sixth Amendment rights do not "extend to parolees and other similarly situat[ed] persons who have already been adjudicated guilty of the crime for which they are punished."  *Pruitt*, 85 So. 2d at 882.  The Fifth Circuit addressed a similar issue in *United States v. Minnitt*, 617 F.3d 327, n. 3 (5th Cir. 2010), finding that the limited due process right to confrontation afforded in a revocation proceeding was unaffected by *Melendez-Diaz.* Accordingly, because the Mississippi Court of Appeals decision was neither contrary to nor an unreasonably application of federal law, this argument does not form the basis of habeas relief.

10: Ground Fifteen: The confidential informant provided false information to law enforcement.

Finally, Pruitt asserts that the confidential informant lied about the quantity of drugs that remained in his car after the drug transaction.  Even if the Court broadly construes this argument, consisting of three sentences, as an attack on the sufficiency of the evidence, it does not provide a basis for habeas relief.  As discussed *supra*, there was more than sufficient evidence for the trial court to determine that Pruitt had violated the terms of his post-supervision release. Accordingly, sufficient evidence exists supporting the decision of the Mississippi Court of Appeals that Pruitt had violated his post-release supervision, and that court's decision did not result "in an unreasonable determination of the facts in light of the evidence."

## III. CONCLUSION

Accordingly, for the reasons stated above, Pruitt's petition for habeas corpus relief should be denied, and this case should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636, <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 15th day of February, 2016.


        /s/  F. Keith Ball
        UNITED STATES MAGSTRATE JUDGE